## Case No. 13,295.

### In re STANTON.

[14 Hunt. Mer. Mag. 73.]

Circuit Court, S. D. Mississippi. May 19, 1845.

BANKRUPTCY — PROVABLE ACCOUNTS — ACCOUNTS CURRENT—PARTNERSHIP DEMANDS.

[1. A claim founded upon accounts current between the bankrupt and his creditors, and upon a comparison of those accounts current and the correspondence and books of the bankrupt, by the agent of the latter who kept those books, is provable in bankruptcy; accounts current having always been regarded as evidence between merchants.]

[2. Three firms bearing different names were composed of the same three partners. One firm was located in Louisiana, and two in Mississippi. The Mississippi firms became largely indebted to the Louisiana firm, and large balances were struck on the books of the latter. The Louisiana partner having gone into bankruptcy, the Louisiana firm was declared bankrupt, and these claims were sold by the assignee as assets belonging to its social creditors. One of the Mississippi partners also went into bankruptcy. The Mississippi firm was declared bankrupt, and the purchaser of these claims presented them for allowance. Held, that the fact of the identity of the partners did not operate to give the claims the character of an individual as distinguished from a social demand, and that they should be allowed as of the latter character.]

There were three firms, each composed of the same three partners,—Buckner, Stanton & Co., of New Orleans, of which Henry S. Buckner was the resident partner; Stanton, Buckner & Co., at Natchez, of which Frederick Stanton was the resident partner; and M. B. Hamer & Co., at Manchester, of which M. B. Hamer was the resident partner. In the course of many years of operation, the Mississippi firm fell in arrear to the New Orleans house, large balances respectively, which were struck on the books of the latter firm prior to the bankruptcy of Buckner, or of F. Stanton, or the death of Hamer. Buckner's bankruptcy was conducted in Louisiana. The balances due the New Orleans house were reported as assets of that firm, and were sold by the assignee there, for the satisfaction of the creditors of that firm, and Oakley purchased. The claims thus originating were presented as entitled to pro rata distribution, out of the products of the Mississippi firm, raised on Stanton's bankruptcy here. The main question was whether the claims were provable.

DANIEL, Circuit Justice. On consideration of the claim presented by this petition, I can perceive no valid objection to it arising either from generality, indefiniteness or uncertainty in its character, or from defectiveness in the proofs on which it is rested. The claim is founded upon accounts current between the bankrupt and his creditor, and upon a comparison between those accounts current and the correspondence and books of the bankrupt, by the agent of the latter, who kept those books. Accounts current have always been regarded as evidences between merchants, and as admitted proofs of the amounts they purport, upon their face, if not objected to within the usual lapse of mercantile correspondence. They are deemed in law a proper foundation on which to sustain the action of an indebitatus assumpsit, and it has been settled that claims upon which indebitatus assumpsit will lie, are provable in bankruptcy. It seems to me, therefore, that the claim in question for anything connected with its form, was provable under the bankruptcy; and I might add, if necessary, that it appears to me to have been sufficiently established by proof.

Let us now inquire whether there be anything relative to the nature of this claim, as being in reality a separate and individual or a social demand; or any consequence deducible from the identity of the individuals constituting these several firms which should lead to its rejection. Without instituting a comparison between the rule approved by Lord Hardwicke, and that adopted by Lord Thurlow and the latter decisions, we will take the modern rule in its most ample and unqualified extent; viz: that social creditors must be satisfied to the entire exhaustion of the social effects, and that the individual partner who may have advanced to the firm his separate and private means to any amount, cannot prove against the firm in opposition to the social creditors. This is putting the principle as broadly as any person can desire. Still it may be asked whether, even within this wide scope, the case before us be comprised? Is this the case of an individual partner attempting to prove his separate claim against the social effects, and in opposition to the social creditors? It is true, according to the proof adduced, there existed three firms, which were all composed of the same individuals. But although this natural identity as to the component members of these firms existed, still each was a distinct and separate mercantile body; and, as to its separate, corporate transactions, which it had an unquestionable power to conduct, and as to its separate and peculiar creditors, each was as distinct and entire as if no other whatever existed. The social creditors of each of those separate bodies had the right to claim whatever was due to it as a firm—had a right to claim first, and if necessary, to the full extent of its rights and effects. They had a right to claim whatever

was due to this firm, as a firm, from any other person or persons, natural or artificial. It matters not whether such artificial body or firm was or was not composed of the same persons, or of others; the debts due to the firm, as such, and all its property and credits, as a firm, belonged to its creditors, under the bankruptcy. This seems to be the natural and inevitable conclusion laid down by Lord Thurlow; and, to say that the individual identity of the persons composing the separate firms should have any effect, would amount to a total overthrow of that principle, and would be allowing the individual and not the social character of the party to give the rule. In the case before us, the New Orleans house is declared bankrupt; before the commissioner, its social claim against the Mississippi house is exhibited and proved; by order of the court, sitting in bankruptcy, it is ordered to be sold for the benefit of the social creditors of the New Orleans house, and the proceeds of the sale applied for the benefit of those creditors. Can there exist any reason why the transferee of this claim should not be permitted to prove it, in the same manner and to the same effect, which the creditor of the New Orleans firm or the assignee of that firm might have done? To my mind, no such reason is apparent. It is, in legal effect, a claim by the assignee of the bankrupt firm of New Orleans, in behalf of the creditors of that firm against the bankrupt firm of Mississippi, and should be allowed against the latter, pro rata, with other claims against them. The converse of this proceeding would be an appropriation to the creditors of the Mississippi firm of that which did not belong to it, or to its creditors, but which belonged rightly to the creditors of the New Orleans firm; for, with respect to those several firms, their respective creditors who dealt with them, and them alone, must attach upon those firms, respectively, and be regarded, a priori, as if they were solitary and unconnected with any other houses.